UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KESEY, LLC, an Oregon Limited Liability Company, | Case No.: 06-CV-540-AC |
| | FINDINGS AND RECOMMENDATION |
| Plaintiff, | |
| v. | |
| MICHELLE FRANCIS, aka MISCHELLE McMINDES, an individual; MIKE HAGEN, an individual; KATHERINE WILSON, an individual; SUNDOWN & FLETCHER, INC., an Oregon corporation; ASSOCIATES FILM PRODUCER SERVICES, an Oregon partnership or other business entity; and DOES 1 through 100, inclusive, | |
| Defendants. | |

ACOSTA, Magistrate Judge:

Plaintiff Kesey, LLC ("Plaintiff"), filed this action to determine who owned the rights to the

screenplay written in 1984 by the well-known author Ken Kesey about the 1919 Pendleton Round-

Page 1- FINDINGS AND RECOMMENDATION                                              *{SIB}*

Up entitled "Last Go Round" (the "Screenplay").  In a Findings and Recommendation entered August 17, 2009, and adopted on November 2, 2009 ("Opinion"), this court found that Plaintiff was the "sole owner of all rights in and to the Screenplay and any derivative works based on the Screenplay". (Opinion at 68.)  This court dismissed the counterclaims for copyright infringement and marketing expenses asserted by defendants Michele Francis, Mike Hagen, and Sundown and Fletcher, Inc., ("Defendants"),[1] dismissed Plaintiff's claim for negligent interference with prospective business advantage, and limited Plaintiff's claim for intentional interference with prospective business advantage to conduct occurring during the two years before the complaint was filed. (Opinion at 68.) On December 16, 2009, the court signed a judgment submitted by the parties which set forth the summary judgment rulings, and dismissed, without prejudice, Plaintiff's claim for intentional interference with prospective business advantage ("Judgment").  The Judgment was entered on December 28, 2009.

On January 11, 2009, Plaintiff filed a motion for attorneys' fees and costs pursuant to 17 U.S.C. § 505, seeking the sum of $368,131.72, which motion is currently before the court. Defendants oppose the motion, arguing that it is untimely, that Plaintiff is not a "prevailing party", and that all of the factors to be considered by the court in determining the appropriateness of awarding attorney fees weigh in favor of Defendants.  Defendants do not contest or even address the reasonableness of the amount requested.

The court finds that the motion was timely filed and that Plaintiff does qualify as a prevailing party.  However, Plaintiff's motion should be denied.  An award of attorney's fees in this instance

---

[1]Katherine Wilson and Associates Film Producers Services, who are also named as defendants in the complaint, resolved their dispute and filed a stipulated motion for judgment on September 10, 2007.

would not further the purposes of the Copyright Act.  Furthermore, applying the five relevant factors produces a balanced record on the attorney fee question, thus counseling against an award of fees here.

### Preliminary Procedural Matter

Defendants move to strike the February 12, 2010, declaration of Faye Kesey filed with Plaintiff's reply memorandum.  Defendants assert that because the declaration was filed after they filed their opposition to the motion for attorneys' fees and they are not entitled to file a sur-reply, the declaration violates Defendants' rights to both procedural and due process.  Plaintiff asserts that the declaration was filed in response to Defendants' plea of poverty, which was first raised in their opposition brief, and that Plaintiff should be allowed to respond to Defendants' arguments on the issue of relative burdens.

The court has considered the declaration with regard to the issue of relative financial burdens and has found that the factor slightly favors Defendants.  Ultimately, the information contained in the declaration did not affect the court's recommendation that Plaintiff's motion for attorneys' fees be denied.  Accordingly, the court finds that the evidence contained in the declaration is not outcome-determinative and that Defendants' motion to strike should be denied as moot.

### Legal Standard

The Copyright Act (17 U.S.C. §§ 101 *et seq*.)(the "Act") provides, in relevant part, that:

> [i]n any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505 (2007).  Awarding fees under this provision is a matter of the court's discretion, but

it is to be applied in an evenhanded manner, *i.e.*, "[p]revailing plaintiffs and prevailing defendants are to be treated alike. . . ." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994).

In determining whether fees should be awarded, the court should consider the following factors, which are non-exclusive: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case), and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 535 n. 19 (quoting *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 156 (1986)). *See also Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1120 (2007). The Ninth Circuit also considers the degree of success obtained in determining both whether attorney fees are recoverable and, if so, the amount of such fees. *Wall Data Inc. v. Los Angeles County Sheriff's Dept.*, 447 F.3d 769, 787 (9th Cir. 2007).

In exercising its discretion, the court must keep in mind the key consideration underlying these factors: whether awarding fees would advance the purposes of the Copyright Act. *Fogerty*, 510 U.S. at 535 n. 19. The purposes served by the Copyright Act are complex. It seeks to deter infringement, while limiting the monopoly privileges it authorizes. Thus, the Act reflects the general policy that monopoly privileges "while 'intended to motivate the creative activity of authors and inventors by the provision of a special reward,' are limited in nature and must ultimately serve the public good." *Id.* at 526, (quoting *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 429 (1984)). Elaborating on this principle, the Court explained:

> The limited scope of the copyright holder's statutory monopoly . . . reflects a balance of competing claims upon the public interest: Creative work is to be encouraged and rewarded, but private motivation must ultimately serve the cause of promoting broad public availability of literature, music, and the other arts. The immediate effect of our copyright law is to secure a fair return for an "author's" creative labor. But the ultimate aim is, by this incentive, to stimulate artistic creativity for the general public good.

*Fogerty*, 510 U.S. at 526-27, (quoting *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975)).

*Discussion*

## I.  Timeliness

Defendants assert that Plaintiff's motion for attorneys' fees was not timely filed.  They argue that the motion, which was filed January 11, 2010, was filed more than fourteen days after the Judgment was signed on December 16, 2010.  Plaintiffs respond that the time limit for filing motions for attorney's fees runs from the date the underlying order is entered, not signed, and that because the Judgment was entered on December 28, 2009, its motion is within the fourteen-day period.

Plaintiff timely filed its motion.  First, Rule 54(d) of the Federal Rules of Civil Procedure, which governs requests for costs and attorney's fees, provides that a claim for attorney's fees must be made by motion and must "be filed no later than 14 days after the entry of judgment." FED. R. CIV. P. 54(d)(2)(B)(i) (2010).  Plaintiff filed its motion within the fourteen days Rule 54(d) provides.  Second, the Judgment specifically provides that "Plaintiff may apply for an award of its costs, including reasonable attorneys' fees, within 14 days of the entry of this Judgment pursuant to 17 U.S.C. § 505 and FED. R. CIV. P. 54(d)."  (Judgment at 3.)  Again, Plaintiff's motion was filed fourteen days after the Judgment was entered.  Accordingly, Plaintiff's motion is timely and is properly before the court.

## II.  "Prevailing Party"

Defendants concede that Plaintiff prevailed on the issue of who owned the copyrights to the Screenplay, but argue that because one of the state law claims was dismissed entirely and the other was limited to a two-year period, Plaintiff did not prevail on all of its claims; this Plaintiff is not the

prevailing party for the entire action and is not entitled to attorney fees under the Act.  Plaintiff contends that because it won on the primary issue of ownership of the Screenplay, which was also the only claim it asserted under the Act, it is properly characterized as the prevailing party.

In *Cadkin v. Loose*, 569 F.3d 1142 (9th Cir. 2009), the Ninth Circuit recently applied the "material alteration" test articulated by the Supreme Court in *Buchannon Bd. and Care Home, Inc. v West Virginia Dept. of Health and Human  Res.*, 532 U.S. 598 (2001), to determine when a party has "prevailed" under the Act.   Under the material alteration test, the key question is whether the litigation was resolved, at least in part, by a judicially-sanctioned "material alteration of the legal relationship of the parties."  *Buchannon*, 532 U.S. 604 (quoting *Texas State Teachers Assn. v. Garland Independent School Dist.*, 489 U.S. 782, 792-93 (1989)).  Material alteration occurs when a party has obtained an enforceable judgment on the merits, as in *Hanrahan v. Hampton*, 446 U.S. 754, 758 (1980)(*per curiam*)("Congress intended to permit the interim award of counsel fees only when a party has prevailed on the merits of at least some of his claims."), or has entered into a court-ordered consent decree, as in *Garland*, 489 U.S. at 792 (A settlement agreement enforced through a consent decree qualifies as a court-ordered "chang[e] [in] the legal relationship between [the plaintiff] and the defendant.").  *Buchannon*, 532 U.S. at 603-04.

At the core of this litigation was the issue of who owned the copyrights to the Screenplay. Both Plaintiff and Defendants asserted an ownership interest in the Screenplay and had engaged in conduct over the last twenty-five years which could be viewed as consistent with such alleged ownership interest.  After considering the various claims and defenses advanced by the parties in their  respective motions for summary judgment, this court determined that Plaintiff was the sole owner of the copyrights to the Screenplay and any derivative works based on the Screenplay.

Page 6- FINDINGS AND RECOMMENDATION                                              *{SIB}*

Clearly, the judgment issued by this court in favor of Plaintiff materially altered the legal position of the parties with regard to the ownership of the Screenplay. Accordingly, Plaintiff is the prevailing party with regard to the claims brought under the Act.

Defendants argue that because Plaintiff's state law claims for interference were either severely limited or outright dismissed, Plaintiff was not a prevailing party for the entire action. The Ninth Circuit has not specifically addressed the issue of whether a party who prevails on its claim under the Act but whose related state law claims are dismissed or restricted voluntarily or by court order is considered a prevailing party under the Act. However, other courts, including the Supreme Court, have clearly held that a party need not prevail on all of the claims asserted to be entitled to attorney fees under the Act. In *Hanrahan*, the Supreme Court determined that Congress intended to permit an award of attorney fees under Section 505 when "a party has prevailed on the merits of at least some of his claims." *Hanrahan*, 446 U.S. at 758. Similarly, the Sixth Circuit recently held that the voluntary dismissal by a plaintiff of several alternative claims did not preclude the plaintiff from qualifying as a prevailing party. *Thoroughbred Software Int'l, Inc. v. Dice Corp.*, 488 F.3d 352 (6th Cir. 2007). The Sixth Circuit explained that the voluntary dismissal of non-copyright claims did not bear on the issue of who prevailed under the Act, and it noted that "there is no requirement that a party must prevail 'in full' to obtain attorney fees." *Id*. at 362. The Sixth Circuit relied on the reasoning of the Second Circuit in *Warner Bros., Inc. v. Dae Rim Trading, Inc.*, 877 F.3d 1120, 1126 (2nd Cir. 1989), that, for the purposes of the Act, "[g]enerally, the prevailing party is one who succeeds on a significant issue in the litigation that achieves some of the benefits the party sought in bringing suit."

The court is confident that the Ninth Circuit would apply these precedent to the precise issue

here to find that a party who prevails on a claim under the Act, but not on related state law claims, is the prevailing party for the purposes of attorney's fees under Section 505. Plaintiff clearly prevailed on the issue of the ownership of the copyrights in the Screenplay, and, consequently, prevailed on the Defendant's counterclaims for copyright infringement, which were the only claims brought under the Act.

## III. Factors

Plaintiff argues that once the court has identified a prevailing party in a copyright action, courts are empowered to "freely award" reasonable attorney's fees, and that an award of attorney's fees to the prevailing party "is the rule rather than the exception and should be awarded routinely." Plaintiff relies on *Historical Research v. Cabral*, 80 F.3d 377, 378 (9th Cir.1996), and *Positive Black Talk Inc. v. Cash Money Records Inc.*, 394 F.3d 357, 380 (5th Cir. 2004), *abrogated on other grounds by Reed Elsivier, Inc. v. Muchick*, ___ U.S. ___, 130 S.Ct. 1237 (2010), in support of this argument. In *Cabral*, the Ninth Circuit stated that "exceptional circumstances" were not a prerequisite to an award of attorney's fees and that district courts may "freely award fees" under the Act. *Cabral*, 80 F.3d at 378-79. However, the court then acknowledged that such awards must promote the Act's objectives and that even a finding of willful infringement does not compel such an award. *Id.* The court then remanded the matter to the district court, which had denied the application for attorney fees based on the absence of exceptional circumstances, for specific consideration of the relevant factors. *Id.* at 379 n.1. Similarly, after stating that the attorney's fees should be routinely awarded, the Fifth Circuit acknowledged in *Positive Black Talk* that "[i]n order for the rule to remain discretionary rather than mandatory, a district court must be able, under certain circumstances, to refuse to award fees." *Positive Black Talk*, 394 F.3d at 383 n.23. The court then

reviewed the district court's consideration of the factors and its finding that the claims were not objectively unreasonable, frivolous, or without proper motive, and agreed with the district court that this was a "rare case in which awarding fees is not appropriate." *Id*. at 382-83.

The judges of this district have exercised their discretion to award attorney fees under Act and both granted and denied petitions for attorney fees filed by the prevailing party in copyright cases. Judge Brown awarded attorneys' fees and costs to the plaintiffs under the Act in *The Hearst Corp. v. Oregon Worsted Co.*, No. CV 99-640-BR, 2001 WL 668040, at *4 (D. Or. April 18, 2001), specifically finding that they were victorious, their claims were not frivolous, there was no evidence that the plaintiffs had improper motives in filing the action, their legal arguments were reasonable, and an award of attorneys' fees would "compensate them for serving as a private attorney general, encourage future private enforcement of infringement claims, and deter future infringements." Judge Brown rejected the defendant's argument that the plaintiffs' six month delay in notifying the defendant of the infringement was unreasonable. *Id*. at *5. In *Dunn & Fenley, LLC, v. Allen*, Civil No. 02-1750-JE, 2007 WL 2973549, at *3-4 (D. Or. Oct. 9, 2007), Judge Jelderks found that the defendant's persistence in arguing the absence of infringement and its refusal to resolve the matter for the modest sums initially demanded by the plaintiff, in light of the clear similarity between the defendant's alleged infringing work and the plaintiff's copyrighted material and especially after the court found in favor of plaintiff of the issue of liability at the summary judgment stage, while not frivolous, were unsustainable and unreasonable and, when considered in conjunction with the finding of willful infringement at trial, favored an award of attorney fees under the Act to the plaintiff as the prevailing party. Also relevant to the decision were Judge Jelderk's desire to compensate the plaintiff for incurring substantial attorney fees after the defendant refused to settle and to encourage

copyright holders to "protect their rights in the face of obvious and willful infringement, as well as the need to deter further infringements. *Id*. at *4.

Judge King has both granted and denied requests for attorney fees under the Act. He awarded fees to the plaintiff as the prevailing party in *Symantec Corp. v. CD Micro, Inc.*, No. 02-406-KI, 04-227-KI, 2005 WL 1334557, at *2 (D. Or. June 2, 2005), finding that several factors, including degree of success obtained by the plaintiff, the objective unreasonableness of the defendant's continuing to sell discs after the court found such sales were unauthorized, and the failure of the disgorgement of the illegal profits to provide sufficient deterrence, favored an award of attorney fees under the Act. Six months later, he denied an application for attorney fees filed by the defendant in *The Estate of Elkan v. Hasbro, Inc.*, No. 04-1344-KI, 2006 WL 240530 (D. Or. Jan. 30, 2006). Judge King, who previously granted summary judgment dismissing the plaintiff's copyright claim, noted that the facts surrounding the creation of the games at issues were coincidental enough to "justify a belief that there was a colorable claim," and that the plaintiff obtained legal opinions supporting its position both before filing the action and before filing opposition to the summary judgment motion. *Id*. at *1. He then found that the "plaintiff's claim was neither frivolous nor objectively unreasonable" and that an award of attorney fees to the defendant would not promote the primary objective of the Act to encourage the production of original expression for the public good. *Id*. Finally, Judge Coffin recently denied the plaintiff's motion for attorney fees and costs in *McNamara v. Universal Commercial Services, Inc.*, Civ No. 07-6079-TC 2008 WL 4772709 (Oct. 27, 2008). The plaintiff won a $1,000 statutory damage verdict for copyright infringement, after which the court refused to increase the damages for willful infringement. *Id*. at *1. Judge Coffin found that all of the relevant factors weighed against an award of attorney fees. Specifically, he found that the plaintiff did not

achieve a favorable result in the litigation, the defendants' infringing conduct was the product of laziness as opposed to an intent to divert revenues from the plaintiff, the defendants' defenses were neither frivolous nor unreasonable, and the plaintiff should not be encouraged or rewarded by an award of attorney fees for his attempts to obtain an enormous windfall by threatening criminal prosecution and then pursuing the litigation to a generally unsuccessful conclusion. *Id*. at *1-2. Judge Coffin particularly noted that "[f]ees and costs were escalated for both parties in this case by plaintiff's refusal to negotiate a reasonable resolution, and defendants have been adequately deterred in their misconduct by the damages awarded and the expense of an unnecessary trial." *Id*. at *2.

Based on these cases, it is evident that while attorney's fees may freely awarded to the prevailing party in a copyright action, the decision on whether fees are appropriate in any specific factual scenario is left to the sole discretion of the district court after thorough and thoughtful consideration of the relevant factors. With this in mind, this court will now consider the factors in light of the matter at hand.

### A. Advancement of Purposes of Copyright Act

Plaintiff asserts that the court's determination that Plaintiff is the sole owner of the copyrights to the Screenplay furthers the purposes of the Act in that it ensures that the Screenplay may be produced as a motion picture despite Defendants' attempt to cloud the title for the last twenty-five years. Defendants argue that neither Kesey nor Plaintiff was ever prevented from marketing the Screenplay and points to the absence of an infringement claim in Plaintiff's complaint as support for this argument. Accordingly, Defendants contend that Plaintiff's assertion that this lawsuit has suddenly opened the floodgates so that the Screenplay can be enjoyed to the fullest is without merit.

Based on the evidence before the court at the summary judgment stage, neither Kesey, nor

his successors, asserted any legal claim to or actively marketed the Screenplay until 2004, shortly before plaintiff filed this lawsuit.  Consequently, there is no evidence that  Defendants' assertion of ownership rights in the Screenplay, or their subsequent attempts to market the Screenplay to producers, in any way hindered Plaintiff's ability to produce the Screenplay as a motion picture.  In fact, the evidence establishes that Defendants were the driving force behind the writing of the Screenplay.  While Kesey expressed an interest in writing a screenplay about the Pendleton Roundup as early as 1979, he did not actually put pen to paper until Defendants encouraged him to do so by offering him $10,000 and providing additional background information and pictures.  Here, Defendants motivated Kesey's creativity and, as such, were themselves contributing the advancement of the purposes of the Act.   Assessing attorney fees against a party who encouraged, and was primarily responsible, for the creation of a new Screenplay and then engaged in conduct to produce the Screenplay for the benefit and enjoyment of the general public would not necessarily serve to advance the purposes of the Act.

Plaintiff also argues that the resolution of the question of who owns the rights to the Screenplay ensures that the publication and distribution of the Novel may continue without interruption.  Defendants note that Kesey published and distributed the Novel in 1994 without any objection or interference from Defendants.  The court is unaware of any evidence tending to establish that Defendants' assertion of ownership rights to the Screenplay in any way effected the publication and distribution of the Novel.  To the contrary, the Novel was successfully published and distributed, received favorable reviews, and is still available for purchase.  This litigation appears to have done nothing to forward the purposes of the Act with regard to the Novel as Kesey, Plaintiff, and the general public have continuously enjoyed the Novel since it was originally published.

This case did not involve a claim of infringement, a critical distinction from many of the cases Plaintiff relies on for its argument that an award of attorney fees is appropriate here because it would further the purposes of the Copyright Act. From the outset, both sides sought to establish their ownership of the Screenplay rights, a legal struggle that forced Plaintiff to defend against as much as prosecute claims under the Act. Importantly, Plaintiff never attacked the authenticity of two key pieces of the Defendants' proffered evidence of ownership, the "To Whom It May Concern" letter that Kesey signed and the payment of $10,000 by Defendants to Kesey which he took from them to write the Screenplay. Ultimately, the issues in this case were largely if not solely legal, as the court's determination turned on the legal significance of the facts the parties had established on summary judgment.

Nor is this a case where a stranger obtained a copy of a draft screenplay, claimed ownership of it, sold it to a producer, and reaped the financial benefits of the creative work. In that scenario, an action by the writer, and true owner, of the screenplay would advance the purposes of the Act and support a claim for attorney's fees. Here, a relationship existed between the parties prior to the writing of the Screenplay. Defendants were involved with, and instrumental in, the creation of the Screenplay, worked closely, at least initially, with Kesey in marketing the Screenplay, and continued to assert an ownership interest in and market the Screenplay on their own for nearly twenty years with no objection from Kesey. In short, given these circumstances, the court cannot say that awarding attorney's fees to Plaintiff under this scenario will further the purposes of the Act.

## B. Degree of Success

The court's discussion of Plaintiff's status as a prevailing party is, to some degree, relevant to its consideration of Plaintiff's degree of success. The court agrees with Plaintiff that its success

on the claims asserted under the Act by both parties was full and complete.  Plaintiff sought and obtained a declaration that it was the sole owner of the copyrights to the Screenplay, and it obtained summary judgment on Defendants' claims for copyright infringement.  Based on these claims, Plaintiff achieved a high degree of success in this action and this factor weighs in its favor.  However, Plaintiff's state law claims for intentional and negligent interference with contractual relations were either dismissed or dramatically limited by the court.  In the event the court determines that Plaintiff is entitled to attorney fees under the Act, this reality must be considered by the court in determining the appropriate amount of fees to be awarded.

C. *Frivolousness*

Plaintiff describes Defendants' position on the key legal issue of copyright ownership as "utterly baseless" for three reasons.  First, the "To Whom It May Concern" letter clearly did not transfer the copyright; second, Defendants acknowledged Kesey's ownership of the Screenplay by identifying Kesey as the owner of the Screenplay in a brochure and a draft agreement; and third, Defendants did not object to the publication and distribution of the Novel in 1994.  Defendants point to the amount of time which passed between the writing of the Screenplay and the initiation of this litigation, as well as the death of Kesey, as factors which made the collection of evidence more onerous and which contributed to the viability of the defenses asserted by them.

While the court ultimately found in favor of Plaintiff on all of the copyright issues, the outcome was not as obvious or certain as Plaintiff makes it out to be.  The mere fact that a party loses a copyright claim at the summary judgment stage does not equate to finding that the parties' claims or arguments were necessarily without merit.  *Maljack Productions Inc. v. Goodtimes Home Video Corp.*, 81 F.3d 881, 889 (9th Cir. 1996)(rejecting the losing parties' argument that the district court

improperly based its finding of objective unreasonableness solely on the fact that its claim did not survive summary judgment, and specifically noting that the district "court did not say, however, that a claim that could not survive summary adjudication was per se objectively unreasonable."). The court must consider Defendants' claims and defenses, along with the evidence supporting those claims and defenses, to determine whether they were trivial or silly.[2]

At the summary judgment stage, Defendants presented evidence that Francis acted on the advice of an attorney in obtaining a written document from Kesey that he was writing the Screenplay for Defendants for $10,000 in consideration. Subsequently, Defendants received assurances from more than one attorney that the language in the "To Whom it May Concern" letter that Kesey was writing the Screenplay for the Defendants was sufficient to transfer ownership rights in the Screenplay to Defendants. The fact that Defendants initiated Kesey's work on the Screenplay and had legal counsel advising them that they had a viable claim of an ownership interest in the Screenplay supports a finding that Defendants' actions in defending the lawsuit were not frivolous.

Plaintiff argues that a number of cases it provided Defendants in 2005, including *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 740-41 (1989), and *Konigsberg Int'l v. Rice*, 16 F.3d 355 (9th Cir. 1993), made it clear that Defendants' claims of copyright ownership were without merit. These cases relate solely to Defendants' claims of ownership and not to the defenses asserted by Defendants based on the passage of time and Plaintiff's failure to assert its own claim of ownership. Accordingly, Defendants' knowledge of these cases in 2005 does not equate to knowledge that all of their defenses were totally without merit as well.

---

[2]"Frivolous" is defined as "[u]nworthy of serious attention; trivial" or "inappropriately silly." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 705 (4th ed. 2000).

Even with regard to Defendants' claims of ownership, the relevant communications and interactions between Kesey and Defendants, including the $10,000 payment and the "To Whom it May Concern" letter, occurred in 1984, but the cases relied on by Plaintiff were not issued until 1989 and 1993. Therefore, for at least five years after the Screenplay was written, the cases Plaintiff relies on had not yet been decided. Even after these cases emerged, Kesey continued to show ambivalence toward his ownership of the Screenplay and Defendants' ongoing attempts to market the Screenplay, which served to confirm Defendants' perception that they owned the Screenplay and, thus, further muddy the ownership issues. Kesey clearly contributed to the creation of the cloud on the title by allowing Defendants to represent that they owned the Screenplay and to market it to producers and interested parties for nearly twenty years. Finally, the evidence relied upon by both sides clouded as much as clarified the parties' respective rights.

Both parties made numerous objections to the evidence offered by the opposing party, and prior to considering the merits of the summary judgment motions, the court addressed these issues and excluded various exhibits as well as portions of deposition transcripts and declarations or affidavits submitted by both parties. Until that time, neither party knew with certainty what evidence would be available to support their claims and defenses until that time. Adding to the confusion surrounding the facts relevant to this matter is that Kesey, the author of the Screenplay and the individual able to provide the most insight into the issues before the court, died in 2001, making his participation in this action impossible and his recollection of the relevant facts generally inadmissible. Despite all this, Defendants were able to support at least some elements of their claims of ownership and their defenses to Plaintiff's claim of ownership with admissible evidence not the least of which was Kesey's signed "To Whom It May Concern" letter, the authenticity of which was never disputed.

The court finds that all of Defendants' claims and defenses were plausible and supported to some degree by the evidence. Accordingly, the factor of frivolousness weighs in Defendants' favor.

### D. Motivation

Plaintiff argues that the Defendants' actions were intended solely to cloud the title to Screenplay for as long as possible. Defendants represent that their motivation was to determine who owned the Screenplay, which they paid Kesey $10,000 to write, and how Plaintiff's delay in filing this action affected the ownership of the Screenplay. The record before the court shows that both parties were motivated primarily by their desire to obtain a legal determination of their rights to the Screenplay and which party was its legal owner. This factor does not weigh in either party's favor.

### E. Reasonableness

As evidence of Defendants' unreasonable legal position, Plaintiff presents evidence that on September 1, 2009, it offered to settle this litigation and forego its right to attorney's fees in exchange for Defendants agreeing not to object to or appeal the conclusions set forth in the findings and recommendation. Defendants counter with evidence that on at least one occasion in September 2009, defense counsel requested a meeting to discuss settlement options and that Plaintiff's counsel did not accept that offer. Additionally, Defendants have offered evidence that in September and October of 2009, defendant Hagen personally attempted to contact Shannon and Faye Kesey several times to discuss resolving the matter, that Shannon Kesey refused to return his calls, and that Faye Kesey informed him that her attorney told her that it was "illegal" to attempt to resolve, or even talk about, the case without the participation of the lawyers. Defendants also argue that their claim of ownership and the defenses they asserted in an attempt to defeat, or weaken, Plaintiff's claim of ownership were objectively reasonable.

First, the fact that Defendants did not accept Plaintiff's offer of settlement after the court ruled on the parties' summary judgment motions is not evidence that Defendants' claims asserted in response to the filing of this action or defenses asserted at the summary judgment stage were objectively unreasonable. As the court has noted, both sides brought evidence to support their respective claims of ownership, a legal question that ultimately required extensive briefing and two separate and lengthy written decisions to resolve. Given the facts and legal issues, Defendants could reasonable conclude that their right to appeal was worth more than a simple exchange for Plaintiff's possible recovery of attorney's fees and costs. Second, given that Plaintiff's entitlement to attorney's fees under the Act is within the court's discretion and in light of the record here, Plaintiff's settlement offer was not especially compelling. Defendants would have given up any and all rights to the Screenplay in exchange for Plaintiff giving up its right to argue that it should be awarded attorney's fees, not an attractive trade since Defendants would have received nothing of value in the settlement if the court denied Plaintiff's motion for attorneys' fees – as it has now done. Defendants were not unreasonable in rejecting this offer. Third, it appears that Defendants did, in fact, wish to discuss settlement at that time but were not willing to accept the Plaintiff's initial offer. Finally, the Ninth Circuit has identified the absence of evidence to support a party's claim, not a party's unwillingness to settle a claim on specified terms, as grounds for finding that it was objectively unreasonable for the party to maintain those claims. *Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1229 (9th Cir. 1997)("[B]ecause evidence in the record reveals that ERG never had any evidence to support its Inflatimation claims, the district court properly found that it was objectively unreasonable for ERG to have maintained these claims.")

Defendants presented colorable evidence in support of their claim of ownership as well as

their defenses to Plaintiff's claims.  While the court did not find that the admissible evidence offered by Defendants warranted a finding in their favor, it does find that Defendants' claims and defenses were not without merit or objectively unreasonable, either legally or factually.  This factor weighs in favor of Defendants.

### F.  Compensation and Deterrence

Plaintiff argues that the absence of damages awarded it in this lawsuit and the small amount in compensation it can reasonably expect to earn from the production of the Screenplay weighs in favor of an award of attorney's fees.  Defendants contend that Plaintiff, as the exclusive owner of the Screenplay, now has the opportunity to market the Screenplay and will benefit financially as a result.

Plaintiff did not allege infringement claims or seek money damages, and it has received all of the relief it requested under the Act.  The claims for which Plaintiff sought money damages – the state law claims for interference with prospective business advantage – were either severely limited or dismissed by the court and then voluntarily dismissed by Plaintiff.  Plaintiff's argument that its return on the Screenplay will be small is entirely speculative, and in any case it has failed to provide authority for its proposition that an attorney fee award should be used to offset a small monetary recovery.

Plaintiff also asserts that litigants in the same position as Defendants should be discouraged from vigorously asserting unsupported defenses, such as statute of limitations, laches, and estoppel, to further the creation and distribution of unique works.  As noted by Defendants, the Screenplay was an attempt by long-time friends to partner together and create a motion picture depicting a colorful time in Oregon history, that it was Defendants' sole foray into the motion picture industry, and that there is no threat that Defendants will attempt such a venture again.  Accordingly, the court finds that

there is no need to deter these Defendants from similar conduct in the future.

Plaintiff's argument that attorney's fees should be awarded to deter other parties from engaging in the same conduct is also without merit. This is not a case where an unrelated third-party attempted to steal or infringe upon a manuscript in which ownership was clearly defined. Here, the Defendants were involved at the outset of the creative process and worked with Kesey to introduce the Screenplay to the public. Defendants were the only ones actively marketing the Screenplay for at least twenty years and were the first parties to register an ownership interest in the Screenplay with the Copyright Office. Defendants had an arguable claim that they held at least partial ownership of the Screenplay. An award of attorney fees in this scenario might deter other individuals who have viable claims of copyright ownership from fully litigating those claims.

Finally, Defendants present evidence that defendant Sundown and Fletcher, Inc., no longer exists and that defendants Hagen and Francis are not wealthy, have few financial resources, and would be forced to file bankruptcy should the court award Plaintiff attorney's fees. Defendants argue that such a result would deter other similarly-situated individuals from engaging in the creative process or offering ideas to writers in the hopes of benefitting from the creative work. Plaintiff asserts that Defendants' financial condition is not relevant to the question of whether attorney's fees should be awarded, and points out that Defendants had sufficient personal wealth to force Plaintiff into four years of litigation and to continue the litigation by appealing this court's rulings. Plaintiff argues that an award of attorney's fees to Plaintiff may give Defendants a wake-up call and force them to abandon their appeal now before the parties incur unnecessary additional attorney's fees.

In support of its assertion that Defendants' financial condition is irrelevant, Plaintiff cites to a case from the Eleventh Circuit, *Mitek Holdings, Inc. v. Arce Eng'g Co., Inc.*, 198 F.3d 840, 843

Page 20- FINDINGS AND RECOMMENDATION                                    *{SIB}*

(11th Cir. 1999)("[I]n determining whether to award attorney's fees under § 505, the district should consider not whether the losing party can afford to pay the fees but whether imposition of fees will further the goals of the Copyright Act."), and a case from the District Court for the District of Columbia which relied upon *Mitek*, *Harrison Music Corp. v. Tesfaye*, 293 F. Supp. 2d 80, 85 (D.D.C. 2003)("The decision to award attorney's fees is based on the whether imposition of the fees will further the goals of the Copyright Act, not on whether the losing party can afford to pay the fees."). Additionally, Plaintiff relies on language in the Opinion and argues that the cases upon which Defendants rely are unpublished, are not of precedential value, and should not be cited to this court.

Plaintiff is wrong for three reasons. First, the cases relied on by Defendants were district court cases, not Ninth Circuit cases. The rule referenced by the court in the Opinion is a Ninth Circuit rule governing unpublished opinions issued by the Ninth Circuit prior to January 1, 2007. Therefore, this rule does not apply to the cases cited by Defendants. Second, one of the two cases cited by Defendants was, in fact, a published opinion. *See Brayton Purcell LLP v. Recordon & Recordon*, 487 F. Supp. 2d 1124 (N.D. Cal 2007). Third, the Ninth Circuit has specifically held that the question of "whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious plaintiff" should be considered when deciding whether to award attorney's fees under the Act. *Ets-Hokin v. Skyy Spirits Inc.*, 323 F.3d 763, 766 (9th Cir. 2003)(citing *Fantasy, Inc., v. Fogerty*, 94 F.3d 553, 559-60 (9th Cir. 1996)).

It is evident that Defendants are not wealthy and that an award of attorney's fees to Plaintiff would pose a great burden on them. On the other hand, Plaintiff is a limited liability company with limited resources but which will benefit financially from sole ownership of the Screenplay. Also, the court again observes that the expense of this litigation was increased as a result of Kesey's failure to

assert a definitive claim of ownership over the Screenplay for more than twenty years or even any

objection to Defendants' attempts to market the Screenplay during that time.  The court finds that the

factor of compensation and deterrence, while relatively equal, slightly favors Defendants.

*Conclusion*

The court finds that awarding attorney's fees under the Act in this case would not serve the

purposes of the Act, but would serve to inhibit the creation of new works by authors or inventors in

cooperative environment, would likely deter defendants in copyright actions from asserting all claims

and defenses supported by the underlying facts, and is not justified by the factors to be considered by

the court.  Accordingly, the court recommends that Plaintiff's motion (#120) for attorneys' fees and

costs pursuant to 17 U.S.C. § 505 be DENIED.  Defendants' motion (#134) to strike should be

DENIED as moot.

<u>Scheduling Order</u>

The Findings and Recommendation will be referred to a district judge for review.  Objections, if any, are due **August 10, 2010**.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections are filed.  When the response is due or filed, whichever date is earlier, the Findings

and Recommendation will go under advisement.

DATED this 26th day of July, 2010.


/s/ John V. Acosta
JOHN V. ACOSTA
United States Magistrate Judge